KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST - # 84065
rvannest@keker.com
SHARIF E. JACOB - # 257546
sjacob@keker.com
BAILEY W. HEAPS - # 295870
bheaps@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Plaintiff
SVB FINANCIAL TRUST

COOLEY LLP
BOBBY GHAJAR (198719)
(bghajar@cooley.com)
COLETTE GHAZARIAN (322235)
(cghazarian@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, California 90401
Telephone:    +1 310 883 6400
Facsimile:    +1 310 883 6500

JOHN HEMANN (165823)
(jhemann@cooley.com)
AMY M. SMITH (287813)
(amsmith@cooley.com)
JUDD D. LAUTER (290945)
(jlauter@cooley.com)
GREG MERCHANT (341287)
(gmerchant@cooley.com)
JULIA THOMAS (353190)
(jthomas@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California  94111-4004
Telephone:    +1 415 693 2000
Facsimile:    +1 415 693 2222

Attorneys for Defendant
FIRST CITIZENS BANK & TRUST COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SVB FINANCIAL TRUST,<br><br>Plaintiff,<br><br>v.<br><br>FIRST-CITIZENS BANK & TRUST COMPANY,<br><br>Defendant. | Case No. 3:25-CV-02267-SK<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:        January 26, 2026<br>Time:        1:30 PM<br>Judge:       Hon. Sallie Kim<br><br>Date Filed:  March 5, 2025<br><br>Trial Date:  February 23, 2027 |

JOINT CASE MANAGEMENT STATEMENT
Case No. 3:25-cv-02267-SK

Plaintiff SVB Financial Trust (the "Trust") and Defendant First-Citizens Bank & Trust Company ("First Citizens") submit this Joint Case Management Statement in advance of the Case Management Conference scheduled for January 26, 2026 at 1:30PM.

## I. JURISDICTION AND SERVICE

This Court has subject matter jurisdiction over the Trust's claims under 28 U.S.C. § 1332. In addition, the Court has federal-question subject matter jurisdiction over the Trust's federal Lanham Act claims (15 U.S.C. § 1051, *et seq*.) under 28 U.S.C. §§ 1331 & 1338; over the Trust's declaratory judgment claim under 28 U.S.C. § 2201; and over the Trust's state-law claims under 28 U.S.C. § 1367 because the state-law claims are so related to the Trust's federal claims that such claims are part of the same case or controversy. Service is complete. Personal jurisdiction and venue are uncontested.

## II. FACTUAL STATEMENT OF THE CASE

### The Trust:

As stated in the Trust's portion of the Initial Joint Case Management Conference Statement, Silicon Valley Bank is a famous brand. The Silicon Valley Bank brand developed a reputation as the go-to bank for startups, entrepreneurs, and the investors that support them. As a result, the U.S. Patent and Trademark office granted SVB Financial Group trademarks on the name Silicon Valley Bank, the abbreviation "SVB," its logos, and in other related trademarks ("the Marks"), and it also registered the Internet domain for www.svb.com ("the domain"). Dkt. 1 ("Compl.") ¶¶ 1, 3 n.2, 6.

On March 10, 2023, a regulator seized the assets and deposits of Silicon Valley Bank, *id.* ¶ 21, which then totaled around $167 billion and $119 billion respectively. Neither SVB Financial Group, nor SVB Capital, nor SVB Securities was part of that seizure, and thus neither the Marks nor the domain were seized. *Id.* ¶¶ 21-22. On March 23, 2023, following an auction held by the regulator, First Citizens Bank acquired a substantial portion of the U.S. assets formerly belonging to SVB for $55 billion. *Id.* ¶ 23. SVB Financial Group later filed for bankruptcy; in the bankruptcy process, its assets were transferred to its successor-in-interest, the Trust. *Id.* ¶ 26. That is, Plaintiff SVB Financial Trust is the liquidating trust established to

manage the assets of SVB Financial Group following its bankruptcy. *Id.* ¶ 10. In other words, First Citizens acquired assets of the former SVB, but did not acquire any of the Marks, which are now owned by the Trust.

After prior acquisitions, First Citizens chose to sunset the former name of the acquired bank and continue the former bank's operations under the First Citizens Bank name. *Cf. id.* ¶ 8. But, in this case, First Citizens recognized the immense value of Silicon Valley Bank brand. Indeed, it booked a nearly $10 billion profit immediately after the acquisition as a result of its adoption of the SVB brand and Marks. But it did not own the Marks. Nor did it have a license to the Marks. It simply decided to use the name without permission and without paying for it. The Trust complained about this use and demanded it cease soon after FCB began using it. *Id.* ¶ 36.

First Citizens used and continues to this day to use the Marks on the outside of its branches, in marketing materials, on its website—often without any hint that First Citizens is not in fact SVB (or vice versa). A reasonable and ordinary consumer, looking at the banks, would have no idea that they are owned by First Citizens Bank. Even worse, sometimes in its branding First Citizens Bank conveys the false impression that it owns the Silicon Valley Bank brand by adding the confusing tagline, "A Division of FCB" note beneath the SVB mark, blurring the identity between the SVB and First Citizens' marks. First Citizens' use of the Trust's Marks to galvanize its move into Northern California has been successful and highly profitable; it has reaped billions in profits and increased valuation based on its use of the SVB brand and Marks. *See, e.g., id.* ¶ 35.

This is trademark infringement, plain and simple. If First Citizens wishes to trade on the Trust's intellectual property to pursue its entry into Northern California, the law demands that it pay for the right to do so. The Trust will likewise prevail on its other causes of action. First Citizens' primary argument advanced in its Answer that is that it, and not the Trust, is the lawful owner of the marks. That argument is baseless. Indeed, First Citizens has admitted in its answer, Dkt. 41 ¶ 3, and in this Statement, that SVB Financial Group is the registered owner of the Marks. First Citizens knew that it was not acquiring the marks owned by SVB Financial Group, stating in its press release: "First Citizens Bank will not acquire any of the assets,

common stock, preferred stock, debt or assume any other obligations of SVB Financial Group." Compl. ¶ 25. The Trust in fact acquired the Marks from SVB Financial Group. *Id.* ¶ 26; *see also* Compl. Ex. A. And the Trust continues to use the Marks to this day. Therefore, First Citizens' counterclaims for cancellation of registration and declaratory judgment are meritless.

This is a straightforward case of trademark infringement. First Citizens chose not to file a motion to dismiss, effectively admitting that no threshold legal issues stand in the way of the causes of action in the Complaint. Therefore, after a brief period of discovery, this matter will be ready for trial. And at trial, First Citizens faces billions of dollars in exposure.

**First Citizens:**

Plaintiff is the successor-in-interest to SVB Financial Group ("SVB Financial Group"), a holding company that was the former parent of Silicon Valley Bank ("SVB"). In addition to being SVB's parent, SVB Financial Group is listed with the United States Patent & Trademark Office as the registrant of the trademarks associated with the SVB brand. However, Plaintiff is the owner of the asserted marks on paper only. SVB Financial Group, as a non-operational company, did not exercise managerial or quality control over SVB's use of the SVB-related trademarks. Instead, SVB and its employees were solely responsible for developing and financing an overall plan and strategy for managing and protecting the trademarks with no involvement or oversight by SVB Financial Group's employees. Indeed, SVB was the original applicant and registrant of the SILICON VALLEY BANK trademark in the early 2000s, and only purported to assign its rights to SVB Financial Group in 2011. But no other rights were assigned by SVB (such as for the SVB mark) and SVB Financial Group exercised no more control over SVB's use of trademarks after the assignment than it had before it, i.e., none. Substantively, SVB was the owner of the marks that Plaintiff purports to assert against First Citizens.

In early March 2023, SVB collapsed in one of the most high-profile bank failures in recent memory, triggering widespread negative media scrutiny. Overnight, the once famous SVB brand became infamous, a liability synonymous with failure and instability. Immediately after SVB's collapse, the FDIC appointed a receiver over SVB and transferred all of its deposits and substantially all of its assets to a bridge bank. After a two-week auction process, First Citizens

acquired substantially all of the assets of SVB on March 27, 2023, including SVB's intellectual property rights. This was critical to stabilize the bank after the collapse and maintain the continuity of services to SVB customers, who expected their banking services to be provided under the Marks and through the Domains. First Citizens continues to operate the SVB line of business using certain trademarks that were associated with the SVB brand pre-collapse.

After First Citizens acquired SVB's assets and during the course of SVB Financial Group's bankruptcy proceedings, SVB Financial Group led First Citizens to believe that it had no objections to First Citizens' use of the trademarks. In reliance on SVB Financial Group's representations, First Citizens expended significant time and resources reviving the SVB brand. First Citizens had to spend millions of dollars to rehabilitate the SVB brand, whose value was impaired and to some, toxic, as a result of the collapse triggered by SVB Financial's $1.8 billion loss. First Citizens has also undertaken substantial efforts to protect these trademarks and build a business in connection with these marks.

What is also clear is that following SVB's collapse, neither Plaintiff nor its predecessor-in-interest, took – or has since taken –any bona fide or affirmative steps to *use* the trademarks. Plaintiff is not licensed to provide banking services (the services covered by the trademark registration it wields in this case). And Plaintiff has abandoned several of the trademark registrations (including U.S. Reg. Nos. 4651259, 4651258, and 4651257), confirming it does not use the marks.

While pretending that it has common law rights in the SVB Marks (it does not), that it played a role in resuscitating the SVB brand (same), and that it performs banking services under that brand (it does not), Plaintiff's motives are transparent. It seeks to squeeze substantial sums of money from First Citizens for its use of trademarks that Plaintiff doesn't own and that would be essentially worthless but for First Citizens' significant, multi-million dollar efforts. The facts and law do not permit that outcome.

III. LEGAL ISSUES

**The Trust:**

The Trust is the owner of the Marks, and has never licensed them to First Citizens.

Indeed, First Citizens refuses to pay for a license.  First Citizens is willfully using the marks, and profiting handsomely off of them.  First Citizens' flagrant and widespread use of the marks has seriously damaged the Trust.  Given that the Trust owns the marks and continues to use them, First Citizens' defenses and counterclaims are meritless.

**First Citizens:**

First Citizens owns the Marks and Plaintiff's trademark registrations are invalid.  And even if Plaintiff could prove that it owns the SVB Marks, First Citizens is entitled to use them on various grounds, including implied license, acquiescence, unjust enrichment, abandonment by Plaintiff, and other reasons.

## IV.    MOTIONS

There are currently no pending motions before the Court.

## V.    AMENDMENT OF PLEADINGS

First Citizens filed its Answer on September 5, 2025.  The Trust filed its answer on September 26, 2025.

The Trust reserves all rights to amend its Complaint and First Citizens reserves all rights to amend its Answer, consistent with the applicable law.

## VI.    EVIDENCE PRESERVATION

The parties certify that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and confirm that they have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

## VII.    DISCLOSURES

The parties exchanged initial disclosures on September 8, 2025.

## VIII.    DISCOVERY

**The Trust's Statement:**

Discovery is underway, but First Citizens is dragging its feet. The Trust served its first set

of document requests and interrogatories on August 29, 2025.[1] Since then, First Citizens has slow-rolled discovery despite the Trust's best efforts to push discovery forward. In particular:

- Despite serving responses and objections to the Trust's discovery requests on September 29, 2025, and the Trust's repeated requests for First Citizens to propose search terms and custodians for use in connection with the ESI production, First Citizens took over three months to provide a proposal (which it only provided last week). The Trust has asked First Citizens to provide hit counts to facilitate meaningful negotiation over terms. First Citizens is refusing to provide them. For its part, the Trust proposed search terms, custodians, and hit counts for First Citizens' requests last month; First Citizens has provided no feedback.

- First Citizens has largely failed to produce documents responsive to the Trust's requests beyond a narrow set of 141 documents, the vast majority of which are either publicly available or documents the Trust already had. The Trust, meanwhile, has produced 4,487 documents totaling 34,573 pages.

- First Citizens has taken untenable positions on the documents it will produce in the future. For example, First Citizens has refused to produce documents related to its decision to use or discontinue use of the trademarks of its prior FDIC-assisted acquisitions. It is also seeking to exclude from production certain documents related to the "Yes, SVB" campaign including documents that would identify the individuals involved in the development of the campaign and those related to the marketing of the campaign itself. And it is refusing to produce certain critical documents and communications relating to the negotiation of the Purchase and Assumption Agreement and First Citizens' understanding of the same regarding the assets it acquired from the Trust. The Trust will of course follow the Court's standing order on discovery disputes and does not seek a ruling on these specific issues today, but observes that motion practice will apparently be necessary to

---

[1] The Trust served a second set of document requests and interrogatories on December 3, 2025, to which First Citizens is set to respond January 16, 2026.

- First Citizens has only responded substantively to *one* of the Trust's interrogatories. To the rest, First Citizens has either refused to respond, or stated it will produce documents pursuant to Rule 33(d). Where First Citizens has provided a Rule 33(d) response, it has failed to produce a single document in response despite having promised it would do so for at least one of the interrogatories by December 5. The Trust answered all 16 of First Citizens' interrogatories and has already supplemented 6.

Given these issues and the Trust's strong desire to keep the overall case schedule intact, *see* Sept. 15, 2025 Hr'g. Tr. 6:18-7:8 (Court explaining it was "not going to move [the trial date] unless there's really a good reason to do that."), the Trust respectfully requests that the Court set a deadline for substantial completion of document production. Absent such a deadline, First Citizens will be able to continue to delay indefinitely and make it impossible for the parties to take depositions in an orderly fashion—and with a complete documentary record—in advance of the July 10, 2026 close of fact discovery. The Trust proposes that an acceptable date for a substantial completion deadline would be March 30, 2026, which would give the parties more than two additional months to negotiate search terms and custodians and produce documents and then a period of approximately three months in which to take depositions. The Trust is willing to discuss alternative dates for this deadline, but sees no way for discovery to proceed on schedule without some scheduling backstop. First Citizens has thus far resisted the Trust's suggestion that the parties stipulate to such a deadline—even though First Citizens' initial proposed schedule included just such a deadline—and the Trust recognizes that the Court does not ordinarily order such a cut off. But doing so is necessary here to keep the case on schedule. To be clear, the Trust seeks only a substantial completion deadline and ***not*** a change to the fact discovery deadline.

First Citizens opposes a substantial completion deadline by arguing that it plans to complete its productions in advance of the close of fact discovery. That's welcome news; if true, the Trust should welcome a deadline to ensure that discovery proceeds in an orderly and bilateral manner and First Citizens would not be prejudiced by an additional deadline.

**First Citizens' Statement:**

First Citizens takes exception to Plaintiff's rhetorical description of the parties' discovery efforts. The bottom line is that First Citizens is working to gather and produce documents and will complete its production well in advance of the Court's deadline for the close of fact discovery and that, as is typical in cases like this, depositions will proceed apace. There is no reason now for a "substantial completion deadline," just as there was no reason a couple months ago when Plaintiff asked the Court to set one and the Court declined. Below, First Citizens provides a more balanced description of discovery to date:

- The Trust provided First Citizens with a search term proposal on December 23, 2025, just before the holiday. That proposed ESI searches for two custodians. After the holiday, First Citizens provided the Trust with its search term proposal on January 9, 2026, proposing five custodians. The Trust has demanded a hit count of First Citizens' search terms *before* the parties have met and conferred on the terms, and *before* any dispute over First Citizens' proposed terms has arisen. This demand is premature and creates unnecessary burden; nonetheless, First Citizens will work with the Trust to resolve this dispute and, as needed, will brief the issue for the Court.

- Plaintiff criticizes First Citizens for producing public documents to date, but that is an accurate way to describe *Plaintiff's* production. Indeed, Plaintiff has only produced publicly available documents, many of which were originally published by either *First Citizens or SVB*, as well as a handful of pre-litigation communications between First Citizens and SVB Financial/the Trust. Neither party has yet produced documents from custodial files responsive to each other's requests. One reason that First Citizens has not produced confidential documents is because the Parties only recently reached agreement on the protective order, filed on December 23, 2025 and entered that same day (Dkt.58).

- As to the Protective Order, at Plaintiff's request, First Citizens worked with Plaintiff to reach a compromise to create an exception to the norm that only outside counsel could view "Attorneys' Eyes Only" material. First Citizens' compromise on that issue saved both time and resources – belying any claim of "slow rolling."

- First Citizens and the Trust have conducted several meet-and-confer sessions and reached agreement on the scope of the vast majority of the Trust's First Set of Requests for Production. First Citizens sent the Trust a letter laying out its position on the production requests and interrogatories still in dispute on January 6, 2026, and the parties met and conferred further this week. Contrary to Plaintiff's positions above, First Citizens has offered appropriate subject matter limitations to make responding to the Trust's otherwise improperly overbroad requests proportionate and feasible. First Citizens will address those issues in discovery dispute letters for the Court's consideration if and when necessary.
- Although beyond the scope of this Case Management Statement, First Citizens notes that the requests still in dispute are wildly overbroad. As just one example, the Trust requests "all" documents and communications concerning First Citizens' decision to use the trademarks for *every* bank it has acquired over the *last 17 years*. The Trust has rejected First Citizens' proposal to narrow this request.
- First Citizens and the Trust are also continuing to meet and confer regarding the remaining requests still in dispute from First Citizens' First Set of Requests for Production, Interrogatories, and Requests for Admission. For instance, in response to First Citizens' interrogatories, the Trust has made vague references to alleged instances of consumer confusion, but has failed to provide any details regarding those instances, including the individuals involved, when the confusion occurred, whether the Trust made any notes or records of those instances, and the Trust's response(s) thereto.
- Beyond the foregoing, First Citizens is continuing to work diligently in supplementing its responses to the Trust's First Set of Interrogatories.

Given the current state of both parties' productions, search term negotiations, and agreements regarding interrogatory supplementation, there is no need to adjust the current case schedule by either adding a substantial completion deadline or altering the deadline for close of fact discovery. First Citizens anticipates making rolling productions over the next few months. The Trust's concern that documents will not be produced in time for taking depositions is

speculative and has no basis in the actual state of play: both parties are negotiating in good faith the scope of their various requests and search proposals.

## IX. CLASS ACTIONS

This is not a class action.

## X. RELATED CASES

First Citizens brought an adversary proceeding in the Bankruptcy Court of the Southern District of New York seeking a determination that it owns the Marks and the Domain: *First-Citizens Bank & Trust Company v. SVB Financial Group and SVB Financial Trust*, Case No. 23-10367(MG) (Bankr. S.D.N.Y); *see also* Dkt. 15-3. The Bankruptcy Court dismissed First Citizens' Adversary Proceeding. *See* Dkt. 34 at 2. There are no other related cases.

## XI. RELIEF

The Trust's Complaint seeks injunctive relief, actual damages, disgorgement of First Citizens' profits, an accounting of First Citizens' profits, reasonable royalties, punitive damages, declaratory relief, interest, costs, and attorneys' fees.

First Citizens seeks cancellation of certain U.S. trademark registrations, abandonment of certain trademark applications, declaratory relief, interest, costs, and attorneys' fees.

**The Trust's Statement**:

Pursuant to the Court's Pretrial Order (Dkt. 44), the Trust provides the following good faith assessment of damages. Given the current stage of the case, these estimates are necessarily preliminary. The Trust reserves the right to amend or supplement its estimates as discovery proceeds and will do so according to the proper discovery and/or expert procedures.

**Actual Damages.** Based on currently available information, including public information concerning potentially comparable transactions, the Trust estimates that it has sustained actual damages in the approximate range of $220 million to $2.14 billion due to First Citizen's infringement, dilution, and misappropriation/conversion of the Marks and the svb domain. Such actual damages comprise at least, for example, lost licensing/royalties revenue and the lost market value of the Marks and the domain at the time of First Citizen's misappropriation/conversion.

Pursuant to 15 U.S.C. § 1117(a), the court should also enter judgment for three times the

amount found as actual damages.

**Disgorgement**. In addition to actual damages, the Trust should be awarded any profits earned by First Citizens that are attributable to its infringement or dilution of the Marks or its violation of 15 U.S.C. § 1125(d). "In assessing profits the [Trust] shall be required to prove [FCB]'s sales only; [FCB] must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a).

Based on First Citizens BancShares, Inc.'s public financial statements, the Trust estimates that First Citizens has earned more than $7.1 billion in revenue from sales under the Marks through its SVB division through 2025 (Q3). Upon information and belief, First Citizens has earned additional revenue from sales under the Marks through non-SVB business segments, including First Citizens' General Bank and/or Commercial Bank segments. By law, all such revenue should be included in the disgorgement award except to the extent First Citizens can prove that particular costs or expenses are properly deducted, or that some portion of its profit is attributable to factors other than use of the Marks. First Citizens BancShares, Inc.'s public financial statements report post-acquisition profit from its SVB division alone exceeding $1.86 billion through 2025 (Q3). Upon information and belief, First Citizens has earned additional profit from its use of the Marks in non-SVB business segments.

In addition, the Trust will seek disgorgement of any future profits earned by First Citizens through its sale of products or services under the Marks.

**Statutory Damages**. The Trust is also entitled to statutory damages at least in the amount of $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed. Moreover, because First Citizens' use of counterfeit marks was and continues to be willful, the Court should award $2,000,000 per mark per type of goods or services sold, offered for sale, or distributed. *See* 15 U.S.C. § 1117(c).

In addition, pursuant to 15 U.S.C. § 1117(d), the Trust is entitled to statutory damages for FCB's violation of section 1125(d)(1) in the amount of $100,000 per domain name.

**Treble Damages**. Pursuant to 15 U.S.C. § 1117(b), the Court should award treble profits or actual damages, whichever is higher, for First Citizens' knowing use of counterfeit marks. The

Trust is also entitled to punitive damages under section 3294 of the California Civil Code, and three times its damages, or three times First Citizens' profits, pursuant to California Business and Professions Code 14250.

First Citizens' strident disagreement (below) with the Trust's recitation of damages is unpersuasive. Indeed, many of the statements that follow are inaccurate. *See, e.g.*, The Trust's Response to First Citizens' Interrogatory No. 1 ("SVBFT continues to provide, among other things, the following services: financial advice, consultancy, and management services, including asset management, financial advisory services, financial valuations, financial information and advisory services, and other financial and business transactions, including efforts to license the SVB MARKS, efforts to sell the SVB MARKS, monitoring use of the SVB MARKS, and enforcing its rights in the SVB MARKS."). The Trust will further substantiate (legally and factually) its plea for damages at the appropriate time.

**First Citizens' Statement**:

Plaintiff is not entitled to any damages, including the wildly inappropriate numbers that it has described above. Assuming arguendo that Plaintiff could prove ownership and infringement, it has no actual damages. It cannot and does not offer banking services. It cannot and does not earn revenue. It is, and always has been, a non-operational entity without any business operations, as was its predecessor SVB Financial Group. As it concedes, any "services" the Trust provides are "for the purposes of an orderly wind down of its investment portfolio." *See* Trust's Supplemental Response to First Citizens' Interrogatory No. 1. Its discovery responses concede that it has *not* used the trademarks in connection with offering or providing any banking services, has no plans to offer banking services, and has taken no efforts to license or otherwise generate revenue based on its claimed rights in the marks.

Against this backdrop, the monetary relief sought by Plaintiff—"actual damages" of any amount (let alone a range of $220 million and $2.14 billion) is unfathomable. Similarly, Plaintiff's prayer for disgorgement (allegedly *$7 billion*) is inconsistent with the facts, law, and equity. For a myriad of reasons, Plaintiff could not have earned First Citizens' revenue, is not entitled to its profits, and First Citizens' profits are not attributable to actions or goodwill owned

by Plaintiff. The numbers also ignore completely First Citizens' multi-billion dollar purchase of the SVB bank assets and multi-million dollar and multi-year effort to revitalize and inject the damaged SVB brand with credibility and trust. Awarding profits that Plaintiff would have no hope of ever earning would be contrary to the Lanham Act's requirement that any remedy "shall constitute compensation and not a penalty." 15 U.S.C. § 1117.

To the extent Plaintiff argues these amounts comprise "lost licensing revenue" and the "lost market value," there is no credible evidence to support either theory. While Plaintiff has made vague references to its efforts to license or sell the at-issue trademarks, it can point to no specific attempts to use or license the SVB brand, which—as described above—were effectively worthless at the time of the acquisition. Indeed, when asked to identify all actions it has taken to sell or license the marks, the Trust only cited its discussions with First Citizens in the context of this dispute. *See* Trust's Response to First Citizens' Interrogatory No. 16. Although Plaintiff alludes to unidentified "potentially comparable transactions," those are not an appropriate metric.

Relatedly, Plaintiff's request for another several million in statutory damages is more of the same; an impermissible windfall with no nexus to any actual harm suffered by Plaintiff.

As noted, any and all goodwill associated with the at-issue trademarks today is due to First Citizens' efforts to resuscitate the brand after SVB's high-profile collapse in March 2023. When First Citizens acquired SVB, the trademarks were not an "asset" of value—they were a *liability*. In fact, the SVB brand would not exist but for First Citizens' significant investment and careful management over the past two years, and any damages or disgorgement to the Trust would be unfair and undeserved enrichment.

Finally, First Citizens disputes Plaintiff's kitchen sink claims for statutory, treble, and punitive damages. Statutory and trebled damages under 15 U.S.C. § 1117(b)-(c) and California Business & Professions Code § 14250 are only awarded in instances of counterfeiting, in which First Citizens is not engaging. First Citizens has more than a good faith belief that it is entitled to use the at-issue trademarks as articulated in its counterclaims and affirmative defenses. Its continued use of the marks therefore does not constitute "willful" infringement nor suggest fraud or malice by First Citizens.

## XII. SETTLEMENT AND ADR

The parties previously filed their ADR certifications. *See* Dkts. 30, 32. The parties have a settlement conference before Judge Kang scheduled for January 27, 2026.

## XIII. CONSENT TO MAGISTRATE FOR ALL PURPOSES

The parties have consented to magistrate jurisdiction.

## XIV. OTHER REFERENCES

None.

## XV. NARROWING OF ISSUES

The parties agree that, as the case progresses, they will meet and confer as necessary to narrow the issues in the case.

## XVI. EXPEDITED TRIAL PROCEDURE

None suggested at this time.

## XVII. SCHEDULING

The current case schedule is as follows. *See* Dkts. 44, 54:

| **Event** | **Date** |
|---|---|
| Settlement Conference | January 27, 2026 |
| Close of Fact Discovery | July 10, 2026 |
| Last day to file motions related to fact discovery | July 17, 2026 |
| Initial Expert Disclosures Due | July 24, 2026 |
| Rebuttal Expert Disclosures Due | August 21, 2026 |
| Close of Expert Discovery | September 11, 2026 |
| Last day to file motions related to expert discovery | September 18, 2026 |

| | |
|---|---|
| Opening Dispositive Motion Deadline | October 5, 2026 |
| Dispositive Motion Opposition Deadline / Cross Motion Deadline | October 19, 2026 |
| Reply and Opposition to the Cross-Motion Deadline | November 2, 2026 |
| Reply ISO Cross-Motion Deadline | November 9, 2026 |
| [If only one motion for summary judgment:] | |
| Opening Dispositive Motion Deadline | October 5, 2026 |
| Opposition to Dispositive Motion Deadline | October 19, 2026 |
| Reply ISO Dispositive Motion Deadline | October 26, 2026 |
| Dispositive Motion Hearing (last day) | November 23, 2026 |
| Deadline to meet and confer to determine whether any evidentiary issues may be resolved by stipulation | December 4, 2026 |
| Deadline to serve but not file motions in limine | December 11, 2026 |
| Deadline to meet and confer regarding:<br>• preparation of the joint pretrial conference statement,<br>• preparation and exchange of pretrial materials to be filed (including jury instructions, verdict forms and voir dire), and<br>• settlement | December 18, 2026 |
| Deadline to serve but not file oppositions to motions in limine | December 18, 2026 |
| Deadline to **File and Serve**:<br>• **Joint** pretrial statement<br>• Trial brief (10 pages, no opposition)<br>• List of depo excerpts for witnesses who will not testify in person<br>• Objections and/or requested counter-designations<br>• Witness List<br>• Exhibit List | January 8, 2027 |

| | |
|---|---|
| <ul><li>Disputed Exhibit List</li><li>Motions in limine</li><li>**Joint** set of proposed jury instructions</li><li>**Joint** verdict form</li><li>Proposed questions for voir dire</li><li>**Joint** proposed statement of the case to be read during voir dire</li></ul>Deadline to **<u>provide to Chambers:</u>**<ul><li>Joint motion in limine binder, collated and tabbed</li><li>Pretrial Binders, including the following, separated by tabs:<ul><li>pretrial statement</li><li>trial briefs</li><li>deposition excerpts and other discovery responses (including any objections and/or counter designations)</li><li>witness lists</li><li>exhibit lists</li><li>jury instructions (including the supporting and responsive memorandum)</li><li>verdict forms, and</li><li>voir dire</li></ul></li><li>Joint disputed exhibit chart w/ copies of disputed exhibits</li><li>Flash drive, containing Word copies of:<ul><li>the jury instructions (including all stipulated and disputed instructions, but not the memorandums),</li><li>the proposed voir dire,</li><li>the statement of the case,</li><li>the joint disputed exhibit chart, and</li><li>any proposed special verdict forms</li></ul></li></ul> | |
| Pretrial Conference | January 22, 2027 @ 1:30 p.m. |
| Trial Begins | February 23, 2027 @ 9:30 a.m. |

## XVIII.     TRIAL

The Court has set the trial date for February 23, 2027.  The parties anticipate that the jury trial will last no longer than five court days.

## XIX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

The Trust filed its certification of interested entities or persons and Fed. R. Civ. P. 7.1 disclosure statement at Dkts. 28 and 29. First Citizens filed its certification of interested entities or person and Fed. R. Civ. P. 7.1 disclosure statement at Dkt. 16.

## XX. PROFESSIONAL CONDUCT

Counsel for both parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

## XXI. OTHER

The parties have no other matters to raise with the Court at this juncture.

Dated: January 16, 2026

KEKER, VAN NEST & PETERS LLP

By:  /s/ Robert A. Van Nest
ROBERT A. VAN NEST
SHARIF E. JACOB
BAILEY W. HEAPS

Attorneys for Plaintiff SVB FINANCIAL
TRUST

Dated: January 16, 2026

COOLEY LLP

By:  /s/ Bobby A. Ghajar
BOBBY A. GHAJAR
JOHN H. HEMANN
AMY M. SMITH
JUDD LAUTER
GREG MERCHANT
JULIA THOMAS

Attorneys for Defendant
FIRST-CITIZENS BANK & TRUST
COMPANY

## ATTESTATION

Pursuant to Civil Local Rule 5-1(i)(3) of the Northern District of California, the filer of this document attests that concurrence in the filing of this document has been obtained from the other signatories to this document.

/s/ Robert A. Van Nest
ROBERT A. VAN NEST